## CHARLES PEABODY *vs.* NATHAN W. HARMON.

It is within the discretion of a commissioner of insolvency to refuse to allow a creditor, examined before him *viva voce* upon oath as to a claim offered for proof against the estate of an insolvent debtor, to consult with counsel as to his answers; and the decision of the commissioner cannot be revised by this court upon a summary petition, unless, perhaps, in a matter essentially affecting the rights of one of the parties.

*It seems*, that a commissioner of insolvency has no power to imprison for contempt a creditor who refuses to answer questions concerning his claim against the estate of an insolvent debtor.

PETITION, filed on the 2d of December 1854, representing that proceedings were now pending before the respondent, a commissioner of insolvency for the county of Essex, in the case of John Strain, an insolvent debtor; that the petitioner had a just and valid claim against the estate of the insolvent, on two promissory notes signed by him; that the petitioner duly made oath to said claim, and presented it to the commissioner, at the first meeting of the creditors of the insolvent, to be proved against his estate, and proved the signatures of the notes; that the counsel of certain persons alleging themselves to be creditors of the insolvent, but who had not then proved their claims, were allowed by the commissioner to examine the petitioner *viva voce* upon oath as to the amount, kind and value of his property more than a year previously, and as to the interest which his wife then had in his property; that the petitioner desired to consult with his counsel, who was present, as to the propriety of the questions put to him, and his rights as to his answers, and attempted to consult with his counsel; but the

Peabody *v.* Harmon.

commissioner refused to allow it, and ruled that during his examination he could not consult with his counsel on the subject. Wherefore the petitioner prayed this court to issue a writ of mandamus or other proper process to the commissioner, commanding him to permit the petitioner to consult with his counsel at all proper times and for proper purposes during said examination. The respondent admitted the truth of the facts stated in the petition.

*B. F. Butler*, for the petitioner.

SHAW, C. J. The personal examination of a creditor proving his claim against the estate of an insolvent debtor, after taking the formal oath required by *St.* 1848, *c.* 304, § 14, before a commissioner of insolvency, is very much in the nature of a cross-examination, and designed for the same purpose—to detect a false claim, if there is any reason to suspect one. We are not aware of any general rule of law, applicable to all cases, by which this court can declare that a creditor, under examination *viva voce* in regard to the truth of his claim, independently of the particular question and the particular circumstances under which it is put, has or has not a right to consult counsel. There may be cases where a creditor advancing a claim under suspicious circumstances, disclosed by a searching cross-examination, ought not to be allowed to gain time and elude its effect by interrupting the examination in order to consult counsel. In others, when the examination departs from the matter in issue, and may affect the party's own rights, and implicate him in a criminal charge, or otherwise require a disclosure of facts against which the party is protected by law, he ought to be allowed the aid of counsel. It must depend much upon the judgment of the magistrate before whom, and for whose information, the examination is had. Indeed, this is implied in the petition itself; and an order from this court in the nature of a mandate, in the terms prayed for, would seem to be nugatory and of no legal effect. We are asked for an order to the commissioner, commanding him to permit the petitioner to consult with his counsel at all proper times and for proper purposes during the examination. This would of course refer it to the

judgment of the commissioner to decide, on each question, upon the fitness of the occasion and of the subject. This authority we think he already has. If in any case it were allowable to break off in the midst of an examination, and come to this court by petition for directions, which, to say the least, is questionable, it must be when the commissioner decides wrong in a point essentially affecting the rights of one of the parties, in requiring or declining to require an answer to a particular question, or refusing or allowing the party under examination to consult counsel in regard to his own rights, or the rights of those whom he is bound to protect.

The petitioner relies on the case of *Ex parte Winsor*, 8 Law Reporter, 514, in which it was held by this court that an insolvent debtor, examined under *St.* 1838, *c.* 163, § 6, was entitled to consult counsel before making his answers. What was the particular question in that case does not appear. But there is a great difference between the situation of a creditor under examination as to his claim, and the condition of a debtor, standing, as it were, upon his deliverance, and bound to make a full and complete disclosure of all his property and concerns. His title to a discharge depends on his making such full and true disclosure, and he is compellable to answer all relevant questions put to him, on pain of imprisonment. In this critical situation, a very tender regard should properly be had for the rights of the debtor.

It is said that this petitioner was in danger of being imprisoned for contempt, if he refused to answer. But we can hardly think that he was in any such danger. In the strictly analogous case of the examination of a party in a common action at law, under the new practice act, if he refuses to answer, he is nonsuited or defaulted, as he may happen to be plaintiff or defendant; *St.* 1852, *c.* 312, § 72; that is, he loses his case; and that would seem to be all the ill consequence which the petitioner would suffer in this case. It may be an inconvenience to a creditor not to be able to prove his debt before an assignee is chosen. But it is an inconvenience which necessarily arises from the mode of trial required in these cases, to be conducted in the first

instance in a summary way before a single magistrate. If the creditor refuses to answer, and his debt is rejected, for that or any other cause, he may appeal to the court of common pleas, or to this court, according to the amount in controversy; *St.* 1838, *c.* 163, § 4; and have his case determined at law. If either party then desires to examine the other, it must be done, as in other actions at law, by written interrogatories, to be answered in writing, in which case the petitioner, if again examined, will have full opportunity to consult counsel.

This is not a case for the summary interference of this court, and the petition must be dismissed.